UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 23-CR-20417-WILLIAMS

UNITED STATES OF AMERICA

v.

KENIA VALLE BOZA,

        **Defendant.**

                                /

## UNITED STATES' OMNIBUS MOTION *IN LIMINE*

The United States of America, through undersigned counsel, hereby moves *in limine* for rulings on several evidentiary issues that are likely to arise during the trial of Defendant Kenia Valle Boza.

## PROCEDURAL AND FACTUAL BACKGROUND

On October 24, 2023, the Defendant was indicted for conspiracy to commit health care fraud and wire fraud, and for major fraud against the United States. ECF No. 1. Throughout the relevant timeframes in the indictment, the Defendant worked as a certified professional coder at Pasteur Medical Center, Inc. and its related entities ("Pasteur"), which provided primary care and other physician services to Medicare beneficiaries. Pasteur was owned by HealthSun Health Plans, Inc. ("HealthSun"), which was a Medicare Advantage Organization ("MAO"). As such, HealthSun contracted with the Centers for Medicare and Medicaid Services ("CMS") to operate and offer Medicare Advantage plans to beneficiaries. Medicare Advantage, also known as Medicare Part C, provides beneficiaries the option of receiving health care services through private plans.

Under Part C, diagnosis codes submitted to CMS by MAOs such as HealthSun are used to determine the amount CMS pays the plan in the following year to provide health coverage to the plan's Medicare enrollees. The diagnosis codes are supposed to be based on legitimate health records authored by qualified health care professionals, such as medical doctors, nurses, and physician assistants. Certain codes for chronic conditions raise a Medicare beneficiary's "risk score" and thus CMS pays the plan more to provide coverage to that patient. In general, the more chronic conditions that a patient has, the sicker the patient is (or appears to be), and the more CMS pays the plan to cover that member. Thus, a plan's manager of Medicare Risk Adjustment ("MRA") can have a profound impact on the plan's income from CMS.

As alleged in the indictment, the Defendant held various managerial positions in the medical coding department at Pasteur from 2015 to 2017, and ultimately served as the Director of Medicare Risk Adjustment Analytics until approximately 2020. In these positions, the Defendant conspired with others to submit false and fraudulent diagnosis codes to CMS, such as diagnosis codes for "Other Hemoglobinopathies" and "Disorder of Carbohydrate Metabolism, Unspecified," which, in turn, caused CMS to increase its payments to HealthSun.

Specifically, the Defendant falsely diagnosed and conspired with others to falsely diagnose beneficiaries in HealthSun's Medicare Advantage plans with risk-adjusting conditions without regard to whether the beneficiary actually had the conditions; instructed coders who were subordinate to her to enter the risk-adjusting conditions directly into the medical records of beneficiaries; and instructed coders to use the login credentials assigned to Pasteur's physicians to access Pasteur's electronic medical record system and enter risk-adjusting conditions directly into the medical records of beneficiaries, which made it appear that the physicians were diagnosing the beneficiaries with those conditions, when, in fact, they were not. The Defendant's conduct caused

HealthSun to submit false and fraudulent diagnosis codes to CMS, which increased the payments made by CMS to HealthSun by millions of dollars.

For her conduct, the defendant is charged with one count of conspiracy to commit health care fraud and wire fraud, in violation 18 U.S.C. § 1349, two counts of wire fraud, in violation of 18 U.S.C. § 1343, and three counts of major fraud against the United States, in violation of 18 U.S.C. § 1031, which are based on three specific instances where the Defendant fraudulently caused a false diagnosis of "Carbohydrate Metabolism, Unspecified" to be entered into the beneficiaries' medical record. Trial is set for June 2, 2025. ECF No. 38.

## **LEGAL STANDARD**

The Government's motions are based on the familiar principles of evidence set forth in the Federal Rules of Evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. In determining whether evidence is relevant under Rule 401, the Eleventh Circuit imposes two requirements: "(1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Glasser*, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985). Relevant evidence may be excluded if its probative value is "substantially outweighed by a danger of" unfair prejudice, confusing the issues, or misleading the jury, among other bases for exclusion. Fed. R. Evid. 403.

**EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL**

**I.    Defendant Should Be Precluded from Offering into Evidence any Specific Acts of Good Conduct.**

The Government expects that the Defendant may attempt to introduce evidence of specific acts of good conduct. For example, one of the Defendant's proposed expert expects to testify that "the vast majority of patients did not receive [the codes at issue], consistent with discretion being applied in their use." Ex. 1, Miscoe Disclosure at 3. In other words, the Defendant intends to introduce evidence that not every beneficiary at Pasteur was falsely diagnosed, or that not every medical record was fraudulently altered. The Court should preclude the Defendant from attempting to introduce such evidence because it is irrelevant and inadmissible.

The Eleventh Circuit has repeatedly held that "'[e]vidence of good conduct is not admissible to negate criminal intent.'" *United States v. Murphy*, No. 23-10781, 2024 WL 4847755, at *10 (11th Cir. Nov. 21, 2024) (quoting *United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991)); *see also United States v. Moreira*, 605 F. App'x 852, 859 (11th Cir. 2015) (per curiam); *United States v. Prine*, 569 F. App'x 859, 860 (11th Cir. 2014) (per curiam); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008).

For example, in *Moreira*, the jury convicted the defendant of various Medicare fraud and money laundering violations relating to a kickback scheme for a home health agency. 605 F. App'x at 854-57. In that case, the defendant sought to introduce evidence of her compliance with Medicare rules and regulations in support of her defense that she did not intend to defraud Medicare. *Id*. at 859. Under a plain error standard, the Eleventh Circuit upheld the exclusion of such evidence as irrelevant—and thus inadmissible to negate criminal intent—because "[t]he Government did not charge and did not argue that there was no legitimate business conducted at the defendant's clinic." *Id.* The Court found that "evidence that some of the claims filed by [the

clinic] may have been for services legitimately provided to eligible patients without the payment of kickbacks was irrelevant." *Id.*

Applying these principles here, any evidence that the Defendant or her co-conspirators did not assign the fraudulent or unsupported codes to the medical records for *all* patients must be excluded. Although the Government will argue that Defendant's fraudulent conduct was widespread, any attempts by the Defendant to rely on isolated instances of purportedly legitimate codes should be precluded under Rules 404 and 405.

## II. Evidence or Argument Blaming the Victim for Failing to Discover the Fraud Should Be Excluded.

The Government moves *in limine* to preclude Defendant from arguing, offering evidence, or eliciting on direct or cross-examination any "blame the victim" defenses that because Medicare somehow approved of the codes submitted by and through Pasteur and HealthSun—*e.g.*, by paying increased amounts to HealthSun based on the false diagnosis or by failing to identify the fraudulent diagnoses—the Defendant could not have intended to defraud Medicare, or known that the diagnoses were fraudulent. Similarly, the United States moves *in limine* to prevent the Defendant from arguing that Medicare or other agencies should have discovered the fraud, or somehow approved Defendant's conduct by failing to discover it sooner. Such evidence is irrelevant, improperly blames the victim of the fraud, and would mislead the jury.

Evidence of Medicare's conduct has nothing to do with the Defendant's guilt or innocence as a matter of law, and it therefore fails to meet the standard for relevance. It is well established that the negligence of the victim in failing to discover a fraudulent scheme is not a defense to a defendant's criminal misconduct. "A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009). This concept holds true throughout criminal law. Bank robbers are not absolved of their crimes if

the bank security systems are deficient; home invaders are not absolved if homeowners leave a key under the mat; and individuals who perpetrate Ponzi schemes are not innocent if their clients include sophisticated Wall Street brokers. There is no contributory negligence in criminal law.

The Defendant cannot point her finger at Medicare to excuse her own conduct. The Eleventh Circuit made this clear in *Svete* when it analyzed the section of the mail fraud statute which reads "any scheme or artifice to defraud." 556 F.3d at 1161-62. This same phrase is part of the health care fraud statute, 18 U.S.C. § 1347, which is modeled after the mail, bank, and wire fraud statutes. *United States v. Mermelstein*, 487 F. Supp. 2d 242, 254 n.2 (E.D.N.Y. 2007) ("The health care fraud statute is modeled after the bank fraud statute, 18 U.S.C. § 1344, and the bank fraud statute as modeled after the federal mail and wire fraud statutes, §§ 1341 and 1343."). Relying on this history and the Supreme Court's interpretation of "any scheme or artifice to defraud," the Eleventh Circuit, sitting *en banc*, explained:

> Because the focus of [a fraud] statute, like any other criminal statute, is on the violator. … a defendant who intends to deceive the ignorant or gullible by preying on their infirmities is no less guilty. . . . whatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces "<u>any</u> scheme or artifice to defraud." A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence.

*Id.* at 1165 (emphasis in original) (internal citations omitted). Following the Eleventh Circuit in *Svete*, and various other Circuits,[1] this Court should exclude any discussion of Medicare's

---

[1] *See United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) ("[A] victim's lack of sophistication is not relevant to the intent element of mail or wire fraud."); *United States v. Thomas*, 377 F.3d 232, 243-44 (2d Cir. 2004) (rejecting argument that victim's foolishness vitiated defendant's fraudulent intent); *United States v. Davis*, 226 F.3d 346, 358-59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." (quoting *United States v. Brien*, 617 F.2d

6

purported negligence. Even if Medicare was at fault—which it was not—such evidence would still be irrelevant, improper, and no defense to the charged scheme.

In addition to being irrelevant, evidence concerning the Medicare's conduct would be prejudicial under Rule 403. Allowing the Defendant to argue that Medicare was negligent in failing to discover the fraud sooner, and that this somehow excuses Defendant's criminal conduct, would mislead the jury. Allowing evidence about such conduct to come before the jury could create the erroneous impression that in order to find the Defendant guilty, the jury must find that Medicare could not have discovered the Defendant's misconduct. Because that is not necessary under the law, the Defendant should not be allowed to create such improper inferences. In addition, such evidence would be misleading, because if the jurors heard lengthy arguments regarding Medicare's actions, they might neglect the more important evidence of what the Defendant did, and improperly focus on issues other than the charged fraud scheme.

Thus, the Court should preclude the Defendant from introducing any such "blame the victim" defense. The Defendant should not be permitted to argue that anyone *should* or *could* have discovered their fraud, or that Medicare did discover their fraud and somehow blessed it. That is especially true where, as here, the evidence will show that the Defendant took several steps to conceal her fraud. Likewise, the Defendant should not be permitted to assert that Medicare's payments based on fraudulent diagnoses led the Defendant to believe that her conduct was somehow legitimate or lawful.

---

299, 311 (1st Cir. 1980))); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) (negligence of victim in failing to discover fraud scheme is not a defense to criminal conduct).

### III. Evidence or Argument Regarding the Government's Charging Decisions Should Be Excluded as Irrelevant.

Elevance Health, Inc. ("Elevance"), a publicly traded company previously named Anthem, Inc., purchased HealthSun in 2017 for approximately $2 billion. After purchasing HealthSun and discovering the fraudulent conduct charged in the indictment, Elevance self-reported the fraud to the Government. The Defendant should be prohibited from introducing evidence or argument relating to who the Government charged and did not charge following the self-report by Elevance because it is irrelevant to the Defendant's guilt.

Testimony or argument regarding whether an uncharged person has or will be charged with a crime is not relevant to the Defendant's guilt. The Defendant should not be permitted to compare her conduct with that of other uncharged individuals. *See United States v. Chugay*, 2022 WL 1782583, *2 (S.D. Fla. June 1, 2022) (granting Government's motion *in limine* to preclude argument that defendant "is not liable because some other person is also liable for the same crime but was not charged"); *accord United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) (upholding granting government's motion *in limine* to prevent defense counsel from comparing defendant's conduct with that of other uncharged or immunized witnesses). Any statements to that effect serve only to prejudice the jury and offer no probative value. Fed. R. Evid. 403. Improper arguments would include, for example, suggestions that the prosecution is unfair because the Government has prosecuted the Defendant, but not others; the identity and quantity of individuals charged in connection with the scheme at issue; the culpability of Defendant as compared to other individuals; and arguments suggesting that this should be a civil rather than a criminal case and therefore the Government overreached in charging Defendant. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by

the Constitution"); *United States v. Jeon*, 624 F.3d 706, 713 (5th Cir. 2010) ("the decision to prosecute is particularly ill-suited to judicial review" and the Government "retains broad discretion as to whom to prosecute") (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)).

Based on her expert disclosures, the Government anticipates that the Defendant seeks to argue that it is "unprecedented" for a medical coder to be charged criminally. Ex. 1, Miscoe Disclosure at 3. Indeed, the Defendant seeks to admit "opinions" that "no AAPC member or other party has sought an ethics opinion or made an ethics complaint" regarding the conduct charged in this case. *Id.* But whether a medical coder has ever been charged criminally is not an issue for the jury; it relates to the Government's charging decisions and is simply irrelevant to the Defendant's guilt. Thus, the Government seeks to exclude testimony or argument suggesting that this matter is somehow "unprecedented," either criminally or ethically, or that the Government has not charged other coders, including those who reported to the Defendant and added diagnoses to beneficiary files. Additionally, the Government seeks to exclude testimony or argument regarding whether other employees or agents of HealthSun and Pasteur to whom the Defendant reported were charged. Whether these individuals bear any culpability is irrelevant to the Defendant's guilt. The Defendant should be precluded from commenting or eliciting evidence that the Government has not charged other employees of HealthSun and Pasteur, just as she should be precluded from eliciting such testimony from any other uncharged witnesses, such as any other former employees who may testify and who have not been charged.

**IV.    Evidence or Argument Regarding the Government's Decision Not to Call an Individual to Testify Should Be Excluded as Irrelevant.**

The Government seeks a ruling *in limine* precluding the Defendant from commenting on or asking the jury to draw any negative inference from the Government's decision not to call a particular individual to testify. "If a witness is 'equally available' to both the Government and a

9

Defendant, then no 'unfavorable inference against the government could be drawn from its failure to call [the] witness.'" *United States v. Smith*, 2019 WL 4281908, *2 (M.D. Ala. Sept. 10, 2019) (citing *Luttrell v. United States*, 320 F.2d 462, 465 (5th Cir. 1963)); *see United States v. Richard*, 678 F. App'x 927, 941 (11th Cir. 2017) ("'[T]he long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible.'") (quoting *United States v. Chapman*, 435 F.2d 1245, 1247 (5th Cir. 1970)). Here, the Government's witness list contains a number of names and the investigation of this matter involved numerous witness interviews. The Government does not intend to call every conceivable witness and the defense has the power to subpoena its own witnesses.

**V.    Testimony or Evidence Regarding the Volume, Nature, and Timing of Discovery and Use of Federal Resources in This Case Should Be Excluded as Irrelevant.**

The United States seeks a ruling *in limine* precluding the Defendant from arguing or eliciting testimony regarding the volume, nature, or timing of discovery or the volume and type of federal resources used in the investigation and prosecution of the case. Any attempt by the Defendant to comment on discovery or allocation of federal resources is irrelevant and unduly prejudicial. Fed. R. Evid. 401, 402, 403. Such argument or testimony creates an undue risk that the jury will be diverted from "its duty to decide the case on the evidence" and to apply the law. *See United States v. Young*, 470 U.S. 1, 7-10 (1985). Instead, such arguments and testimony invite the jury to improperly consider its feelings toward the Government and the Government's decision making about how to allocate resources.

**VI.   Evidence or Argument Alluding to Collateral Consequences of a Conviction Should Be Precluded.**

The Government seeks a ruling *in limine* precluding the Defendant from making arguments or presenting evidence to encourage the jury to acquit based on anything other than the evidence

and the law, including the Defendant's potential sentence, the impact of a conviction on Defendant's life (such as the impact on Defendant's family and/or future earnings prospects), and Government overreach. Because the jury will play no part in Defendant's potential sentencing, and because the collateral consequences of a conviction are irrelevant to the factual questions the jury must decide, the mention or implication of potential consequences is irrelevant and would serve only to invite jury nullification.

Indeed, the Eleventh Circuit Pattern Jury Instructions prohibit the jury from considering punishment in any way in determining the Defendant's guilt. PATTERN CRIM. JURY INSTR. 11TH CIR., B10.1 (2024). *See United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991). Permitting such argument by defense counsel is tantamount to a request for jury nullification. *See, e.g.*, *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (collecting cases in support of proposition that a defendant has no right to present evidence or make arguments other than to provoke jury nullification); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("defense counsel may not argue jury nullification during closing argument"); *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court …."); *United States v. Young*, 19-cr-60157-RUIZ, D.E. 96 (S.D. Fla. Dec. 4, 2019) (precluding evidence or argument "aimed at jury nullification," as well as argument "raising the possibility of a civil resolution in the present case or advancing arguments that similar anti-kickback criminal cases have resulted in civil resolutions").

**VII.    Impermissible Expert Testimony Should Be Excluded.**

On March 24, 2025, counsel for the Defendant submitted disclosures for three proposed expert witnesses: Michael Miscoe (a certified professional coder and health lawyer), *see* Ex. 1;

11

John Yeats (a medical doctor), *see* Ex. 2; and Benjamin Scher (a data analyst), *see* Ex. 3. Each of these disclosures contain proposed testimony that is inadmissible.

### A. Legal Opinions Cloaked as Expert Testimony Should Be Excluded.

On page 3 of his expert disclosure, Miscoe, a self-described "health lawyer" and founding partners of Miscoe Health Law, summarizes 11 "opinions" he intends to offer at trial. The Court should exclude the opinions expressed in points 2-5 because they constitute inadmissible legal opinions.

The Defendant should not be permitted to elicit legal opinions from Miscoe at trial and disguise those opinions as expert testimony. *See, e.g.*, *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness … must not testify to the legal implications of conduct; the [district] court must be the jury's only source of law."); *United States v. McIver*, 470 F.3d 550, 532 (4th Cir. 2006) (expert opinion is "generally inadmissible" if it "states a legal standard or draws a legal conclusion by applying law to the facts") (citation omitted*); United States v. Young*, 19-cr-60157-RUIZ, D.E. 96 (S.D. Fla. Dec. 4, 2019) (granting motion in limine to preclude defendant "from calling lawyers as expert witnesses to state legal conclusions as to the meaning or application of a rule or statute, or to opine that Defendant's conduct was legal") (citing *Montgomery*, 898 F.2d at 1541 (11th Cir. 1990); *McIver*, 470 F.3d at 562)).

In points 2-3 and 5, Miscoe claims that he is "unaware" of any statute, regulation, or rule that prohibits a coder from engaging in certain conduct that is at issue in this case. *See* Ex. 1, Miscoe Disclosure at 4. In essence, Miscoe opines that there is no law that prohibits the Defendant's conduct, which is an impermissible legal opinion. Similarly, in point 4, Miscoe opines that "password sharing is not a per se indication of fraudulent conduct." *See id.* But again, what qualifies as "fraudulent conduct" is not the province of an expert, but rather the domain of the

Court, when instructing the jury as to the elements of the crimes charged, and of the jury, when deciding what the evidence shows. Therefore, because points 2-5 are legal opinions cloaked as expert testimony, they should be excluded.

### B. Opinions about the Defendant's Intent Should Be Excluded.

In his expert disclosure, Dr. Yeatts opines that the "coding practices in this particular provider practice were not aimed at garnering more value from risk adjustment." *See* Ex. 2, Dr. Yeatts Disclosure at 3. Dr. Yeatts instead concludes that "it is more reasonable to believe that the defendant and the providers were acting in the spirit of delivering comprehensive care during the time period relevant to this case." *Id.* at 4. Because these opinions address "whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged," Fed. R. Evid. 704(b), they are inadmissible.

By asserting that the "coding practices" in this case "were not aimed" at increasing reimbursement from Medicare but instead were part of providing "comprehensive care," Dr. Yeatts attempts to opine on the defendant's mental state. The coding practices at issue in the indictment are the coding practices that the defendant directed her co-conspirators to follow. And by opining on whether those coding practices were intended to increase reimbursements from Medicare, Dr. Yeatts is opining on whether the defendant had the intent to defraud, which is an element of the wire and health care fraud offenses charged in the indictment. Therefore, Dr. Yeatt's testimony as to the intent of the "coding practices" should be excluded. Fed. R. Evid. 704(b).

### C. The Defendant Should Be Compelled to Disclose the Bases and Reasons for Certain Expert Opinions, or in the Alternative, Precluded from Offering those Opinions at Trial.

In his disclosure, Dr. Yeatts states that it is his "understanding" that many of the patients diagnosed with "Other hemoglobinopathies" or "carbohydrate metabolism d/o" received

13

diagnoses in the same year that mapped to the same HCC. Ex. 2, Yeatts Disclosure at 3. Based on these findings, Dr. Yeatts opines that the defendant's "coding practices" were not intended to increase her employer's reimbursements from Medicare. *See id.* at 3-4. In addition to opining on the defendant's mental state—which, as described above, the rules forbid, *see* Fed. R. Evid. 702(b)—Dr. Yeatts does not reveal what his "understanding" is based on. He does not identify which patients had overlapping diagnoses or the purported overlapping diagnoses that mapped to the same HCC. *See id.* Similarly, the defendant offers the opinion of Ben Scher that "the empirical evidence is inconsistent with the notion that entries after 4pm or within 60 seconds of another entry necessarily involve[s] password sharing by coders." Ex. 3, Scher Disclosure at 4. Yet, like Dr. Yeatts, Mr. Scher does not explain what he means by "empirical evidence," or upon which "empirical evidence" he relied. *Id.*

      Federal Rule of Criminal Procedure 16 safeguards the truth-seeking function of the court by reducing the possibility of unfair surprise and ensuring that experts will be thoroughly tested on cross-examination. *See* Fed. R. Crim. Proc. 16 advisory committee's note (1993). Where an expert witness notice fails to identify "bases or reasons" for an opinion, courts routinely exclude testimony on the grounds of Rule 16 without reaching the principles of *Daubert* and Rule 702 or, in the alternative, require parties to provide "bases and reasons" before allowing the purported expert to testify. *See e.g.*, *United States v. Hoffecker*, 530 F.3d 137, 187–88 (3d Cir. 2008), *superseded on other grounds*, *Rad v. Att'y Gen. United States*, 983 F.31 651 (3d Cir. 2020) (upholding district court's exclusion of defendant's proffered expert witness as insufficient under Rule 16).

      Here, neither Dr. Yeatts nor Mr. Scher identify any bases or reasons that actually support their particular opinions. Thus, the Court should require the defendant to supplement her

14

disclosures for both Dr. Yeatts and Mr. Scher, or, in the alternative, exclude theses opinions from trial.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court grant its Omnibus Motion *in Limine*.

## Rule 88.9(a) Certification

The Government attempted to confer with counsel for Defendant via email, but did not receive a response before the filing of this motion.

Dated: May 5, 2025

Respectfully submitted,

LORINDA LARYEA, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

s/*Thomas J. Tynan*
Thomas J. Tynan
Special Bar No. A5502788
Assistant Chief
Jacqueline Z. DerOvanesian
Florida Bar No. 125662
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue NW
Washington, D.C. 20005
301-807-0466 (Tynan)
202-285-9285 (DerOvanesian)
Thomas.Tynan@usdoj.gov
Jacqueline.DerOvanesian@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Thomas J. Tynan, hereby certify that on May 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*s/Thomas J. Tynan*